**Wendell KING, Defendant-Appellant,**

v.

**STATE of Missouri,**
**Plaintiff-Respondent.**

No. 39518.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 20, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 18, 1979.

William Shaw, Public Defender and Joseph W. Downey, Asst. Public Defender, Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Brenda Farr Engel, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Steven H. Goldman, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

STEWART, Judge.

Wendell King was sentenced to a term of 20 years upon his plea of guilty to the crime of robbery in the first degree with a dangerous and deadly weapon. He filed a motion under Rule 27.26 to set aside the judgment entered upon his plea. After an evidentiary hearing the court denied the motion. We affirm the order of the trial court.

As we read the points relied on by Mr. King, he contends that the court erred in failing to set aside his plea of guilty and vacate the judgment and sentence, because at the time he entered the plea the court had reasonable cause to believe that he had a mental disease or defect that rendered him unfit to proceed, and that the court, upon its own motion, should have ordered a psychiatric examination and conducted a hearing to determine the issue. He also contends that he was denied effective assistance of counsel in that counsel did not move the court for a psychiatric examination to determine his fitness to proceed.

Mr. King's motion under Rule 27.26 also attacked his sentence on the ground that he was denied effective assistance of counsel because counsel misled him into believing that if he entered a plea of guilty he would be placed on probation and sent to Archway House, a drug rehabilitation center. He does not challenge the trial court's denial of his motion on this ground.

Because of the nature of this appeal it is necessary to make an extensive statement of the facts developed at the evidentiary hearing. In 1966 Mr. King entered a plea of guilty to the crimes of robbery first degree and assault with intent to rob. The court suspended his sentence of concurrent terms of five years imprisonment. In February, 1972 he entered a plea of guilty to the crimes of robbery in the first degree and robbery in the first degree with a dangerous and deadly weapon. Again the court assessed terms of five years to run concurrently and suspended the sentence.

On February 23, 1972 the movant was released from confinement after his plea and entered St. Louis State Hospital with a chief complaint of drug addiction. On March 6, 1973 he was discharged to Archway House with a final diagnosis of "Personality disorder, drug dependence . . . opium, opium alkaloids and their derivatives . . . anti social personality."

On September 27, 1973 Mr. King entered a plea of guilty to the crime of robbery in the first degree with a dangerous and deadly weapon. This proceeding is the subject of the present appeal. The robbery occurred on Sunday, May 6, 1973 in a Quick Shop in St. Louis County. The store manager was robbed of $276.00 at gun point and three customers and three employees were locked in a meat cooler.

The transcript of the plea hearing and of the sentencing was introduced into evidence at the hearing on the 27.26 motion. The proceeding with respect to the plea covers

eighteen pages of the transcript. The court's inquiry developed that Mr. King, a native of St. Louis, was 26 years of age and went to the eleventh grade in school. He has an I.Q. of 80 which is on the border line of retardation. He was represented by a reputable and competent attorney. Mr. King's mother worked in the lawyer's household and the members of the King family were friends of the lawyer. This attorney had represented the movant with respect to the charges made against him in 1966 and in 1972. The attorney had counseled and worked closely with Mr. King in attempts to rehabilitate him. Another member of this attorney's law firm was present when Mr. King entered his plea of guilty. Mr. King's mother and his drug counselor were also present at the hearing.

The trial court meticulously explained the rights that movant would waive upon entering a plea of guilty and carefully questioned him with respect to his understanding of his rights and the consequences of a plea.

Mr. King advised the court that he had been confined for over three months and was not under the influence of drugs or alcohol. He was not taking medicine of any kind. He told the court that he had been to State Hospital and to Malcolm Bliss on a drug program. At State Hospital they had something "for me not being right" because of drugs. When asked if his "mind was working all right now" he replied "Not quite all right, sir."

Crucial to our consideration is the testimony that follows:

Q. (By the court) "What's the matter, Mr. King?

A. It just doesn't seem right all the time. It just isn't right all the time. It's just mostly paranoid.

Q. All right. Let me ask you do you have any fears. Are you afraid of anything much? A. No.

Q. Do you have a feeling like you want to be aggressive and hurt somebody or break out or get away or . . .. A. No.

Q. Tell me how this affects you, this paranoia that you are talking about.

A. It just affects my mind, it seems like, every once in a while as far as a seizure or something like that.

Q. How does that affect you? Does it make you tremble or shake, or does a lot of lights flash or what happens?

A. It makes me tremble.

Q. How often does that happen?

A. Every once in a while.

Q. Have you had any of that trouble in the last two or three days?

A. Since I have been over there I have had it.

Q. Over at the county jail? A. Yes, sir.

Q. When was the last time you had one of those problems?

A. About last month.

Q. How do you feel this morning? Do you feel physically all right?

A. Yes, sir.

Q. Do you understand what is going on here? That's the big important problem. A. Yes, sir."

Mr. King lucidly related the circumstances leading up to the crime and the commission of the robbery. He told the court that on the Friday before the robbery he was sick and contacted his probation officer who referred him to the drug counselor. He contacted the counselor who told him to come in on Monday and to stay out of trouble. On Sunday he committed the robbery. He said that he borrowed a gun from an old friend and drove to the Quick Shop where he committed the robbery. He got about $200.00 and was arrested in trying to escape. He had no accomplices. The money "was confiscated by the police." He acknowledged that he had received no promises or inducements to plead.

After the court ascertained that Mr. King still wanted to enter a plea of guilty, it accepted the plea, found that Mr. King had entered the plea voluntarily with full knowledge of all of his constitutional rights; that he had waived those rights; that he fully appreciated and understood what was being done and that there was no coercion, threats or promises and no intimi-

dation by anyone of what the court would do. The court postponed sentencing until a presentence report could be obtained.

Movant was sentenced on November 30, 1973. He appeared with his attorney and the other member of the firm who had represented movant at the plea hearing. His mother was also present. The court had before it a presentence report from the probation officer as well as a letter from Mr. Boyd Brown, a drug counselor from Malcolm Bliss Mental Health Center. The letter recounted the fact that movant had been hospitalized as a patient under the federal drug rehabilitation effort, and released to the post hospitalization phase. It was Mr. Brown's clinical impression that Mr. King had the strength and potential to warrant further work with him.

Mr. King explained to the court that he had committed the robbery because he was sick from drug intoxication and that he also needed the money to pay people he owed for drugs or "they would do something" to him.

When the evidentiary hearing on the present motion was first set on September 3, 1974, the cause was continued so that a psychiatric examination could be had. Mr. King was examined by Dr. Jacks who concluded in a report dated October 4, 1974, that movant was not then capable of proceeding. The hearing was continued. A report of Dr. Jacks dated November 4, 1977 concluded that movant was competent to proceed with the hearing at that time. The evidentiary hearing was held on December 12, 1977. Prior to the hearing on that date a psychiatrist retained by Mr. King's family examined movant and concluded that he was competent to proceed. In that examination he also concluded that Mr. King suffers from "chronic schizophrenia probably paranoid in type and currently in remission."

This doctor testified on behalf of movant that he had examined Mr. King on August 4, 1975, August 16, 1975 and October of 1975 at Fulton State Hospital. When he first saw Mr. King he was suffering from schizophrenia. Because of his past history

and the emergence of the psychosis while in prison the doctor was of the opinion that movant was obviously unable to cope with the stress of penitentiary life.

This doctor questioned the validity of the diagnosis made at State Hospital in St. Louis because in his opinion it did not fully consider the nurses notes which indicated that Mr. King would make inappropriate responses to certain situations such as "laughs and smiles at most unfunny things."

The doctor was unable to say that movant was not competent to proceed at the plea hearing. He testified that it was possible that movant knew what he was doing at the time he entered the plea of guilty.

The attorney who represented movant when he entered his plea of guilty was of the opinion that movant understood what was going on at that hearing and that he understood the meaning of the plea. He had seen Mr. King on other occasions. He saw movant on at least one occasion in the home of Mr. King's principal counsel. There was nothing that counsel saw in his discussion, his relations with Mr. King or his knowledge of the case that would cause him to request an examination to determine his mental fitness to proceed. The lawyer was pessimistic about movant's chances of obtaining any kind of probation and did not make any promise of probation to Mr. King.

Movant testified that he did not remember pleading guilty. He did remember that he had a case involving robbery. He recalled talking to the lawyer who was present at the plea hearing and that he went into court after talking to the lawyer. The lawyer promised him that he would go to Archway House. He "felt" that after going before the judge that he would go to Archway House. He had also talked to the attorney who primarily represented him. This attorney "just said I [movant] might have a chance [of] going to Archway House."

On cross examination he testified that after talking to the lawyer who was at the plea hearing he went into court and talked

to the judge. He testified that he could not remember what he talked about before the judge on that day.

The court made extensive findings of fact and conclusions of law. It found that movant had a long history of heroin addiction and that his troubles including his hospitalization were due to the addiction. It found that on the date of the plea movant was represented by counsel; that his mother and his drug counselor were present; that movant had been confined for a number of months and was "presumably drug free"; that none of the persons present then or at any other time suggested that movant was not mentally fit to proceed or that a psychiatric examination should be made. The court observed that it carefully questioned movant and that it saw and heard nothing then or previously that would lead the court to believe that a psychiatric examination would have disclosed that movant was not mentally fit to proceed. The court made essentially the same finding with respect to sentencing, noting that movant's mother and both of his attorneys were present and that no one, including movant, gave the slightest indication that Mr. King needed or wanted a psychiatric examination or that he was not mentally fit to proceed.

The court acknowledged that movant suffers from schizophrenia and probably had the disorder at the time of the proceeding in question but found that the condition was in remission and that it did not interfere with movant's ability to understand the nature of the proceedings, or to consult and cooperate with counsel.

The court concluded that movant had not sustained his burden in the proceeding; that counsel did not tell him that he would be placed on probation if he pleaded guilty; that it was also made clear to him by the court and he understood it; further that movant was mentally fit to proceed; no one suggested the contrary and that it saw and heard nothing to require a sua sponte order for psychiatric examination.

■ The conviction of an accused, by way of trial or plea of guilty, while legally incompetent is a violation of due process.

*Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In Missouri a person is not competent to proceed if as a result of mental disease or defect, he lacks capacity to understand the proceedings against him or to assist in his own defense. § 552.020. *Bryant v. State,* 563 S.W.2d 37, 41 (Mo. 1978). If a judge at any stage of the proceedings has reasonable cause to believe that a defendant has a mental defect or disease excluding fitness to proceed it is incumbent upon the court to order a psychiatric examination and if necessary thereafter to hold a hearing to determine the issue. § 552.020(2). *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

■■ In a motion under Rule 27.26 the burden is upon movant to prove by a preponderance of the evidence that the court should have instituted a competency proceeding under the principles outlined above. *Pickens v. State,* 549 S.W.2d 910 (Mo.App. 1977). On review of the trial court's ruling upon the issues raised in the motion we are "limited to a determination of whether the findings, conclusions and judgment of the trial court was clearly erroneous." Rule 27.26(j).

As said in *McDonald v. State,* 572 S.W.2d 633, 635 (Mo.App.1978),

". . . suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial. . . . Neither does the fact of commitment in a mental hospital, . . . considerable emotional disturbance, . . . nor alcoholism and drug addiction, . . . make a defendant incompetent as a matter of law."

In the case at bar there was nothing about movant's behavior at the hearing on the plea or at the sentencing some weeks later that would indicate to the court or to counsel that movant was incompetent to proceed. We do not have bizarre behavior or attempted suicide that was present in *Pate, supra,* and *Drope, supra.* Although the court expressed an interest in seeing the medical report of movant's confinement

in the State Hospital, it was not furnished. The diagnosis contained in that report merely confirmed movant's explanation of his condition as drug addiction. The court questioned movant carefully with respect to his symptoms and of his understanding of the proceeding. It listened to the movant's lucid account of the robbery. After considering all of the circumstances the court concluded that movant fully appreciated and understood what was being done and accepted movant's plea. At the hearing on the 27.26 motion movant's memory of what transpired immediately before the plea was entered was crystalline. He testified that his attorney promised that he would be put under the supervision of Archway House. The opacity developed only when inquiry was made concerning his recollection of the hearing on the plea which occurred immediately after he spoke with the lawyers. It is then that he professed to remember nothing that transpired in the hearing. This testimony would indicate to the court that movant was concealing the true extent of his recollection and understanding of the proceeding. The court was also aware that movant had pleaded guilty on two prior occasions.

The court had the opportunity of observing movant at the plea hearing and six weeks later at the sentencing. The court could reasonably find that there was nothing in movant's demeanor to raise a reasonable doubt in the court's mind as to Mr. King's competency. Present at the plea hearing were movant's attorney, the drug counselor who was familiar with his background and problems, and his mother. None of them indicated that movant was not competent to proceed.

■ The court's conclusion that movant had not carried his burden of proving that a reasonable doubt existed as to movant's competency to proceed is not clearly erroneous.

■ Movant also charges that counsel was ineffective in not requesting a mental examination and hearing with respect to his competency to proceed. Movant's counsel was closely acquainted with movant and his mother and saw no necessity of requesting a mental examination. Co-counsel, who appeared with movant, testified that he saw nothing in his discussion or relations with Mr. King or his knowledge of the case that would cause him to request an examination to determine his mental fitness to proceed. In this respect movant has again failed to carry the burden required of him. See *McDonald v. State, supra.*

The judgment of the trial court is affirmed.

STEPHAN, P. J., and KELLY, J., concur.